UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy Case No. 13-00627 |
| | ) | |
| PAWEL HARDEJ, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Honorable Janet S. Baer |
| | ) | |

## MEMORANDUM OPINION

This matter is before the Court on the motion for a rule to show cause filed by former chapter 7 debtor Pawel Hardej (the "Debtor"). The Debtor alleges that Metropolitan Development Enterprises, Inc. ("MDE") and its counsel, John P. Konvalinka and Kevin P. McJessy (collectively, the "Respondents"), have violated the discharge injunction under 11 U.S.C. § 524(a)(2) by pursuing an action against the Debtor in the Circuit Court of Cook County (the "state court") to collect a debt that was discharged pursuant to 11 U.S.C. § 727.[1] The Debtor seeks an order enjoining all proceedings in the state court, a finding that the Respondents are in contempt of court, and an award of damages, as well as attorneys' fees and costs, against the Respondents arising from their alleged violation of the discharge injunction. For the reasons stated herein, the pursuit of the action against the Debtor in the state court constitutes a violation of the discharge injunction, and the Respondents are ordered to cease any further pursuit of the Debtor. As for an award of damages and fees, however, the Debtor's request is denied.

## JURISDICTION

The Court has jurisdiction to determine this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District

---

[1] Unless otherwise noted, all statutory and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532, and the Federal Rules of Bankruptcy Procedure.

of Illinois. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), and (O).

## BACKGROUND

The facts in this matter are somewhat unusual, and, therefore, they are outlined here in great detail.[2] Those facts are as follows.

Prior to the filing of his chapter 7 bankruptcy case, the Debtor was the president and sole director and shareholder of MDE, an Illinois corporation in the business of real estate development. (Bankr. No. 13-00627, Docket No. 79, Ex. B, at 1-2, ¶¶ 6 & 7.)[3] On April 16, 2004, MDE, as agent for 1910 N. Clark LLC, entered into a contract with Robert C. Austin and Kathryn C. Gamble for the sale of certain real estate. (*Id.*, Ex. B, attached Ex. A.) That contract required purchasers Austin and Gamble to pay earnest money in the amount of $250,000 (the "Earnest Money") to MDE's attorney. (*Id.*, Ex. B, attached Ex. A, at 1-2, ¶ 3.) Although the real estate sale was not completed, the Earnest Money was allegedly never returned to Austin and Gamble. (*Id.*, Ex. B, at 3-4, ¶¶ 17-21.) As a result, on September 28, 2004, Austin and Gamble, through counsel John P. Konvalinka, filed suit against MDE in the state court, entitled *Robert C. Austin and Kathryn C. Gamble v. Metropolitan Development Enterprises, Inc.*, No. 04 CH 15936, seeking, among other things, return of the $250,000 in Earnest Money (the "Austin Litigation"). (*Id.* at 2, ¶ 8 & Ex. A, at 3.) The Austin Litigation was lengthy and complex, involving multiple counterclaims and an appeal, and was consolidated with other actions between the parties and third parties claiming an interest in the suit, including Metropolitan Bank and Trust (the "Bank"), predecessor in interest to North Community Bank. (*Id.* at 2, ¶ 10; *see also* Docket No. 50, at 2-3, ¶ 9.)

---

[2] In addition to the pleadings filed in this matter, the Court takes judicial notice of the docket in the Debtor's case. *See Cervac v. Littman (In re Littman)*, 561 B.R. 79, 83 n.4 (Bankr. N.D. Ill. 2016) (recognizing that the court may take judicial notice of its own docket).

[3] Unless otherwise noted, future references to the docket are to the Debtor's bankruptcy case, Bankr. No. 13-00627.

2

On June 30, 2007, MDE executed an assignment of its interest in the Earnest Money to the Bank (the "Assignment"). (Docket No. 50, Ex. A.) The Assignment was made by MDE as security for a promissory note executed by 1910 N. Clark LLC and the Debtor to the Bank. (*Id.*) The intent of the Assignment was to transfer to the Bank all of MDE's title to and interest in the funds and to confer on the Bank the right to prosecute, settle, and compromise the claims in the Austin Litigation. (*Id.* at 2-3, ¶ 9 & Ex. A.) The Bank alleges that, at one time prior to the Assignment, MDE's only remaining asset was the Earnest Money deposit but that, since the Assignment, that deposit belongs to the Bank and, thus, MDE has no remaining assets. (*Id.* at 3, ¶ 10).

In early 2009, while the Austin Litigation was pending, MDE ceased operations. (Docket No. 79, at 2, ¶ 11.) At that time, the Debtor alleges, MDE was insolvent and facing multiple suits by creditors. (*Id.*) Because the company was no longer operating, the Debtor did not renew its business license with the Illinois Secretary of State. (*Id.*) Thus, in early 2010, MDE was administratively dissolved by the State. (*Id.*)

On January 8, 2013, the Debtor filed a voluntary chapter 7 bankruptcy petition. (Docket No. 1.) In the petition, he listed twenty "other names used by the Debtor in the last [eight] years." (*Id.* at 4.) Among those names were MDE and nineteen limited liability companies, including 1910 N. Clark LLC. (*Id.*) The Debtor's schedules list liabilities of over $44 million to creditors holding secured claims and almost $9 million to creditors holding unsecured nonpriority claims.[4] (*Id.* at 14-17 & 20-28.)

The Debtor did not list in his schedules an ownership interest in MDE or any of the nineteen limited liability companies. (*See id.* at 7-32.) Nor did the Debtor list an ownership

---

[4] It is unclear how the Debtor came to have such significant liabilities. The Court surmises that they were the obligations of MDE or the various limited liability companies, which the Debtor personally guaranteed or for which he otherwise had a responsibility under the structure of his real estate operations.

3

interest in any real estate or the ownership of any stock or interests in incorporated or unincorporated businesses. (*See id.*) Additionally, the Debtor did not schedule MDE or Austin and Gamble as creditors. (*See id.* at 14-28.) In his statement of financial affairs, the Debtor listed MDE as a real estate development business in which he had an interest from November 22, 1999 to April 12, 2012, as well as the nineteen limited liability companies identified as "other names used by the Debtor" in his petition. (*Id.* at 4 & 40-42.) The Debtor scheduled the Bank as a creditor holding an undisputed general unsecured claim in the amount of $200,000 described as a "Note Loan." (*Id.* at 26.) The schedules do not state the date of the "Note Loan" or whether the note was executed by the Debtor individually or as an officer of an entity in which he held an interest. Nor is there any indication that the "Note Loan" scheduled is the same obligation at issue in the Austin Litigation. The record identifies that the Bank as a creditor of MDE but is silent as to whether the Bank was a creditor of the Debtor. (*See* Docket No. 50, at 2, ¶¶ 8 & 9; Docket No. 60, Transcript of Record, Sept. 22, 2014 ("Tr."), at 3:19-4:4.) Nevertheless, the Bank acknowledges the listing of the $200,000 obligation in the Debtor's schedules. (*See* Docket No. 50, at 2, ¶ 5.)

The Debtor's 341 meeting of creditors was scheduled for March 4, 2013. (Docket No. 5.) The Bank received notice of the meeting because the Debtor scheduled the Bank as a creditor in his case, but Austin, Gamble, and MDE were not given such notice. (*See* Docket No. 9, at 3-5.)

On March 5, 2013, the day after the 341 meeting was held, chapter 7 trustee Gregg Szilagyi (the "Trustee") filed a no-asset report. (Docket No. 15.) A discharge order was entered in the Debtor's case on July 29, 2014 (the "Discharge Order") (Docket No. 34), and the case was

4

closed on August 1, 2014 (Docket No. 36).[5]

On August 20, 2014, the Trustee filed a motion to reopen the Debtor's bankruptcy case. (Docket No. 37.) In the motion, the Trustee indicated that he wanted the case reopened "to facilitate the administration of a valuable asset . . . which first came to his attention subsequent to the date" that the case was closed. (*Id.* at 2, ¶ 8.) The Trustee explained that, although the Debtor listed MDE as one of the names he used and as an entity of which he had been an officer and director, "the Debtor failed to disclose the nature of his interest in [MDE] or the value thereof [either] in [his] [s]chedule B . . . or when testifying at the meeting of creditors held on March 4, 2013." (*Id.* at 2, ¶ 9.) The Trustee noted that he filed a no-asset report because of the Debtor's "ambiguous reference" to MDE. (*Id.* at 2-3, ¶ 10.) As a result of the Debtor's failure to disclose the nature of his interest in MDE or the value thereof, the Trustee alleged that the estate's interest in the corporation was not abandoned upon the closing of the case. (*Id.* at 3, ¶ 11.) Accordingly, the Trustee contended, MDE remained, at that time, property of the estate pursuant to § 554(b). (*Id.*)

On August 27, 2014, the Debtor's bankruptcy case was reopened, and the Trustee was subsequently reappointed. (*See* Docket Nos. 38 & 39.) On September 15, 2014, counsel for the Trustee filed a motion pursuant to § 363(f), requesting permission to sell the stock of MDE to an entity identified as RJE II, LLC (the "Buyer") for $25,000, subject to higher and better offers. (*See* Docket No. 42.)

On September 22, 2014, the Court held a hearing on the Trustee's motion to set bidding procedures regarding the potential sale of the MDE stock. (*See* Docket Nos. 46 & 60.) At that hearing, counsel for the Debtor stated that the MDE stock was stock in a company owned by the

---

[5] The entry of the Discharge Order was delayed for over a year after the 341 meeting was held because an adversary proceeding brought by creditor Albany Bank and Trust Company, N.A. was pending until July 29, 2014. (*See* Adv. No. 13-01006.)

5

Debtor but no longer operating and that the Debtor had "absolutely no objection to [the] sale." (Docket No. 60, Tr. at 3:14-18.)

Counsel for the Bank explained that there had been an Assignment of the Austin Litigation by MDE to the Bank and that the Bank believed that MDE, the defendant in that Litigation, was "the backer or owner of the [B]uyer . . . and [was] attempting to purchase [MDE] in order to gain control of the [L]itigation."[6] (*Id.* at 3:19-4:4.) Noting that MDE had no value, since its "only potential asset" was the Litigation which had been transferred to the Bank, counsel for the Bank questioned whether the Buyer might want to reconsider the sale. (*Id.* at 4:5-15.)

For his part, the Trustee stated that it was important to distinguish between the Debtor and MDE. (*Id.* at 5:1-4.) He argued that the sale consisted of whatever right, title, and interest to and in the MDE stock that the Trustee had, if any, and that while the purchase price was not significant, given the claims filed, the Trustee would be remiss in walking away from $25,000. (*Id.* at 5:9-18.)

Upon completion of the hearing, the Court concluded that there was no "real objection" to the sale and that the offer for the MDE stock was essentially "a gift." (*Id.* at 5:19-6:1, 7:2-4). Accordingly, the Court approved the bidding procedures and set the sale hearing date. (*Id.* at 9:2-24; Docket No. 46.)

On October 6, 2014, the Bank filed an objection to the Trustee's motion for an order authorizing the sale of the MDE stock. (Docket No. 50.) In its objection, the Bank alleged that

---

[6] The Bank did not expand on its allegation that the purchase may have been an attempt to gain control of the Austin Litigation, and no evidence was presented to the Court to explain the allegation.

6

the Trustee failed to disclose the identity of the Buyer and its connection to MDE;[7] that there was no business justification for the sale, since the potential recovery would not result in a meaningful distribution to creditors; and that the Buyer was not entitled to a finding of "good faith" under § 363(m) because its motivation in purchasing the stock was "questionable." (*See id.* at 3-5, ¶¶ 11, 14, 19.)

On October 13, 2014, the Trustee filed a response to the Bank's objection in which he disclosed more information about the Buyer, including its correct name, "RJE2, LLC." (Docket No. 52, at 5, ¶ 16.) The Trustee also disclosed that the sole member and manager of the Buyer was an individual named Richard J. Ebersole. (*Id.*) No further disclosure was made, however, regarding any relationship between Ebersole and the Debtor, MDE, or other parties to the Austin Litigation. In an affidavit, Ebersole stated that neither he nor the Buyer "ha[d] any economic interest in the bankruptcy estate" of the Debtor. (*Id.*, Ex. 2, at 2, ¶ 10.) Only now has the Debtor alleged in his motion for a rule to show cause that the Buyer was represented by Konvalinka, the same attorney who had represented Austin and Gamble in the Austin Litigation and who now represents MDE in a state court action pending against the Debtor (discussed below). (Docket No. 79, at 3, ¶ 15 & Exs. A & C.)

On October 15, 2014, the Court entered an order overruling the Bank's objection and approving the sale to the Buyer. (*See* Docket No. 54.) The terms of the sale provided that the Buyer was purchasing the MDE stock "on an AS IS, WHERE IS basis," with all latent and patent defects, and essentially disclaiming representations or warranties of any kind. (Docket No. 42, Ex. A, at 2, ¶ 5.) Thereafter, the Trustee filed an initial report of assets, and the Court set a bar date of January 16, 2015 for creditors to file claims. (*See* Docket Nos. 55 & 56.) MDE

---

[7] The Bank alleged that the asset purchase agreement attached to the Trustee's motion lists an incorrect name for the proposed Buyer. According to the Bank, the agreement identifies the Buyer as "RJE II, LLC," but the website for the Secretary of State for Nevada lists an entity known as "RJE2, LLC." (Docket No. 50, at 3, ¶¶ 11 & 12.)

7

received notice of both the Trustee's initial report of assets and the claims bar date through M. Eryk Nowicki, its registered agent as listed on the Debtor's statement of financial affairs.[8] (*See* Docket No. 1, at 40.) Neither the Buyer nor MDE filed a proof of claim in the Debtor's bankruptcy case or a complaint to determine the dischargeability of any alleged debt owing from the Debtor to MDE. Likewise, the Bank did not file a proof of claim in the Debtor's case. After distributions were made to creditors, the Debtor's bankruptcy case was closed for the second time on March 4, 2016. (Docket No. 77.)

Following the conclusion of the sale, MDE filed an appearance in the Austin Litigation through its counsel, Kevin P. McJessy. (Docket No. 79, at 4, ¶ 22.) Thereafter, on July 17, 2015, MDE (through McJessy), Austin and Gamble (through counsel John Konvalinka and Joel Benton Daniel), and the Bank agreed to entry of a judgment in the Austin Litigation against MDE and in favor of Austin and Gamble in the amount of $275,000. (*Id.*, Ex. A.)

On January 22, 2016, almost eighteen months after the Debtor received his discharge and nearly three months after the conclusion of the sale of the MDE stock, MDE filed suit against the Debtor in the state court, entitled *Metropolitan Development Enterprises, Inc. v. Pawel Hardej*, 2016 L 000758 (the "State Court Action"). (*See id.* at 5, ¶ 25 & Ex. B.) In the Action, MDE, represented by McJessy,[9] seeks, among other things, money damages from the Debtor for his alleged breach of fiduciary duty and conversion under the Illinois Business Corporation Act. (*Id.* at 5, ¶ 27 & Ex. B.) Some of the claims in the State Court Action are based on the agreed judgment in the Austin Litigation. (*Id.* at 5, ¶ 26 & Ex. B, at 7, ¶ 37.) As discussed above, these

---

[8] The receipts for Docket Nos. 55 & 56 indicate that the Clerk of Court electronically mailed notice of the Trustee's initial report of assets to Nowicki on October 15, 2014 and electronically mailed notice of the claims bar date to him on October 16, 2014. Neither Austin nor Gamble received notice of the initial report of assets or the bar date as they were not listed as creditors of the Debtor.

[9] MDE is also represented in the State Court Action by Konvalinka, the same attorney who represented Austin and Gamble and was prosecuting MDE during the Austin Litigation. (Docket No. 79, at 5, ¶ 28 & Ex. C, at 1.)

8

claims originated from the Earnest Money deposit dispute between Austin and Gamble and MDE that arose years before the Debtor received a discharge in his bankruptcy case. (*Id.*, Ex. B, at 3-4, at ¶¶ 17-21.)

On April 22, 2016, the Debtor filed a pleading in the State Court Action, requesting more time to respond to the complaint and arguing that the alleged MDE claims against him had been discharged in his bankruptcy case. (*Id.* at 5-6, ¶ 29.) Thereafter, the Debtor filed a motion to dismiss the State Court Action, arguing, once again, that the alleged debt had been discharged. (*Id.* at 6, ¶ 30.) To date, the state court has not ruled on the discharge issue. The state court has, however, issued several rulings in connection with the Debtor's obligations to respond to discovery in the State Court Action. (*Id.*, Exs. D & F.)

On August 9, 2016, the Debtor filed his motion to reopen the bankruptcy case and for a rule to show cause. (*Id.*) In the motion, the Debtor alleges that any and all debts claimed by MDE were discharged pursuant to § 727 and that MDE is improperly seeking to collect discharged debts in the State Court Action in violation of § 524(a)(2). (*See id.* at 5 & 8-9, ¶¶ 25 & 36-40.) On August 15, 2016, the Court set a briefing schedule on the Debtor's motion for a rule to show cause and subsequently entered an order reopening the bankruptcy case.[10] (Docket Nos. 82 & 83.) On October 5, 2016, the Court entered another order staying all matters in the State Court Action pending a determination by this Court of the issues raised in the Debtor's motion, including whether the Debtor has been discharged of the alleged debt that MDE is seeking to collect in the State Court Action and whether the parties are enjoined from proceeding in that Action under § 524. (*See* Docket No. 95.)

---

[10] Each of the Respondents filed responses to the Debtor's motion. McJessy and MDE both adopted Konvalinka's response. (Docket No. 90; *see* Docket Nos. 85 & 88.)

9

## DISCUSSION

The Debtor argues that MDE has violated the discharge injunction of § 524(a)(2). According to the Debtor, that injunction protects him from MDE's collection activities in connection with his personal liability on MDE's alleged claims. The Debtor asks the Court to enforce the Discharge Order entered in his bankruptcy case by enjoining all proceedings in the State Court Action, finding the Respondents in contempt of court, and awarding the Debtor actual damages and reasonable attorneys' fees and costs incurred in enforcing the discharge injunction. To reach the issues of whether the State Court Action should be enjoined and whether contempt is appropriate, the Court must first determine whether any debts that the Debtor purportedly owes to MDE were discharged in his bankruptcy case. The Respondents' defense to the Debtor's motion is that those alleged debts were not discharged pursuant to § 523(a)(3)(B).[11]

### I. MDE's Claims in the State Court Action Are Not Excepted from Discharge

The Discharge Order entered in the Debtor's bankruptcy case discharged him from liability as to all pre-petition debts except those enumerated in § 523 which are excluded from discharge. *See* 11 U.S.C. § 727(b); *Tidwell v. Smith (In re Smith)*, 582 F.3d 767, 771 (7th Cir. 2009). At issue here is § 523(c)(1), which provides that certain debts are dischargeable unless a creditor files a timely request for a determination of dischargeability of those debts and a court finds that the debts are nondischargeable. Specifically, the text of § 523(c)(1) reads as follows:

> Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of

---

[11] Ordinarily a determination of dischargeability of debt is properly before the Court in an adversary proceeding. *See* Fed. R. Bankr. P. 7001(6). However, given that this matter arises post-discharge and post-closing of the Debtor's case in the context of the Debtor's request to enforce the Discharge Order, the Court will address the issue of dischargeability presented by the Debtor's motion for a rule to show cause. *See Enodis Corp. v. Emp'rs Ins. of Wausau (In re Consol. Indus. Corp.)*, 360 F.3d 712, 716 (7th Cir. 2004) (explaining that "[t]he proper vehicle to enforce a court order is a motion in the original case").

subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

11 U.S.C. § 523(c)(1).

The three paragraphs to which § 523(c)(1) refers except from discharge any debt: (1) "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud," 11 U.S.C. § 523(a)(2)(A); (2) "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[,]" 11 U.S.C. § 523(a)(4); and (3) "for willful and malicious injury by the debtor to another entity or to the property of another entity[,]" 11 U.S.C. § 523(a)(6). Bankruptcy Rule 4007(c) provides a sixty-day deadline from the first date set for the 341 meeting of creditors for a creditor to file a complaint to determine the dischargeability of debt under § 523(c)(1). Fed. R. Bankr. P. 4007(c); *Tidwell v. Smith (In re Smith)*, 379 B.R. 315, 326 (Bankr. N.D. Ill. 2007) *aff'd*, No. 08 C 46, 2008 WL 4067306 (N.D. Ill. Aug. 27, 2008), *aff'd*, 582 F.3d 767 (7th Cir. 2009).

If a creditor is deprived of its right to reasonable notice of the debtor's bankruptcy case which would have allowed it to file a timely complaint under § 523(c)(1), however, § 523(a)(3)(B) may afford the creditor relief. *See Smith*, 379 B.R. at 326-27; *In re Marino*, 195 B.R. 886, 896-97 (Bankr. N.D. Ill. 1996). That provision excepts from discharge:

> [A]ny debt . . . neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit . . . if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.]

11 U.S.C. § 523(a)(3)(B).

The Respondents identify MDE's claims against the Debtor in the State Court Action as

11

those falling within the scope of §§ 523(a)(4) and (a)(6). (*See* Docket No. 90, at 9-10.) The Respondents contend that, because the alleged debt was not scheduled by the Debtor and because MDE was not given notice of the commencement of the Debtor's bankruptcy case in time to file a proof of claim and a complaint to determine dischargeability pursuant to § 523(c), the alleged debt owed to MDE by the Debtor is nondischargeable under § 523(a)(3)(B). As such, the Respondents argue, MDE may pursue the State Court Action against the Debtor.

The Respondents can prevail here only if the following elements of § 523(a)(3)(B) are established: (1) MDE's alleged debt was not scheduled, and (2) MDE did not have notice or actual knowledge of the Debtor's bankruptcy case in time to file a proof of claim and a request for a determination that its claims are nondischargeable pursuant to § 523(c)(1). *See Smith*, 582 F.3d at 777. In the Seventh Circuit, the Respondents need not prove the merit of MDE's claims against the Debtor in connection with any alleged breach of fiduciary duty or conversion of assets under § 523(a)(4) or (a)(6) in order for MDE's debt to be excepted from discharge under § 523(a)(3)(B). *See id.*

Turning to the elements of § 523(a)(3)(B), the record clearly demonstrates that the Debtor did not list on his schedules any claim held by MDE. Therefore, the first element is satisfied.

The Debtor has the burden of establishing the second element: that MDE received notice or had actual knowledge of the Debtor's bankruptcy case. *See Leventhal v. Schenberg (In re Leventhal)*, 481 B.R. 409, 416-17 (N.D. Ill. 2012), *aff'd*, No. 12-3745, 2013 WL 599520 (7th Cir. Feb. 6, 2013). This element concerns whether the Debtor provided MDE with basic due process notice. *See In re O'Shaughnessy*, 252 B.R. 722, 729 (Bankr. N.D. Ill. 2000). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise

12

interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The Court considers the totality of the circumstances in determining whether the notice given was reasonable. *O'Shaughnessy*, 252 B.R. at 730. The reasonableness of the notice varies according to the knowledge of the parties. *Id.*

A creditor's actual notice of a bankruptcy case may constitute reasonable notice that satisfies due process requirements. *See Marino*, 195 B.R. at 893-94. Due process may also be satisfied with respect to notice where a creditor gains actual knowledge of a debtor's bankruptcy case through informal means. *See In re Dartmoor Homes, Inc.*, 175 B.R. 659, 670 (Bankr. N.D. Ill. 1994); *see also Yukon Self Storage Fund v. Green (In re Green)*, 876 F.2d 854, 855-57 (10th Cir. 1989) (finding that, although it did not receive formal notice of the bankruptcy case, a creditor with actual knowledge was bound by the bar date for filing complaints to determine dischargeability). Among the factors to consider in deciding if notice is reasonable are whether any alleged inadequacies in the notice prejudiced the creditor and whether the creditor had time to take "meaningful action in response to the impending deprivation of its rights." *Marino*, 195 B.R. at 895.

In this matter, MDE was not sent formal notice of the Debtor's case from the Clerk of Court because it was not listed as a creditor of the Debtor and its alleged debt was not included in the Debtor's schedules. Additionally, the Debtor's knowledge of the bankruptcy case may not be imputed to MDE because, at the time of the filing, the Debtor was not acting either within the scope of his employment or with the intent to benefit MDE. *See, e.g., Bone Care Int'l, LLC v. Pentech Pharm., Inc.*, No. 08-cv-1083, 2012 WL 1068506, at *11 (N.D. Ill. Mar. 29, 2012) (citing *United States v. One Parcel of Land Located at 7326 Highway 45 N., Three Lakes,*

13

*Oneida Cty., Wis.*, 965 F.2d 311, 316 (7th Cir. 1992)).

Notwithstanding the foregoing, MDE had reasonable notice of the Debtor's bankruptcy filing for purposes of due process because Nowicki, MDE's registered agent and an Illinois attorney, had actual knowledge of the chapter 7 case. In fact, Nowicki not only had knowledge of the bankruptcy, but also participated meaningfully in the case.

On April 17, 2013, Nowicki filed, on behalf of the limited liability company of which the Debtor was an officer as of the petition date, a response to a request by Albany Bank and Trust Company, N.A. ("Albany Bank"), a creditor of the Debtor, for the production of documents. (*See* Docket No. 22.) The response indicated that a subpoena was served on Nowicki on April 5, 2013, twenty-eight days prior to May 3, 2013 — the deadline to file a complaint pursuant to § 523(c) as set forth under Bankruptcy Rule 4007(c). (*See* Docket Nos. 5 & 22.) Such a length of time was sufficient for MDE to have taken appropriate action to protect its rights pursuant to § 523, before the expiration of the Rule 4007(c) deadline. *See Smith*, 582 F.3d at 780 (gathering cases); *Grossie v. Sam (In re Sam)*, 894 F.2d 778, 781-82 (5th Cir. 1990) (finding that notice received eighteen days prior to the deadline was sufficient); *Herman v. Bateman (In re Bateman)*, 254 B.R. 866, 874-75 (Bankr. D. Md. 2000) (finding that twenty-six days' notice was sufficient).

Additionally, Albany Bank filed an adversary proceeding objecting to the discharge of the Debtor, concerning, among other things, alleged transfers of money from MDE to the Debtor. (Adv. No. 13-01006, Docket No. 1, at 4, ¶ 20.) When the parties later agreed to settle the adversary, Nowicki was sent notice of the motion to dismiss the adversary proceeding and did not seek to adopt and pursue that action against the Debtor on behalf of MDE. (*See id.*, Docket Nos. 40 & 41.)

14

On these facts, Nowicki had a reasonable opportunity to take appropriate action to protect MDE's interests. Thus, under the totality of the circumstances, the notice given to MDE was reasonable and satisfies due process. Accordingly, the Debtor has met his burden as to the second element of § 523(a)(3)(B), and the claims alleged in the State Court Action are not excepted from discharge.[12]

## II. MDE's Actions Constitute a Violation of the Discharge Injunction

The Court now turns to the Debtor's request for a rule to show cause. An order of discharge not only discharges pre-petition debts, but also operates as an injunction against the commencement or continuation of any action to collect from a debtor any debt discharged as a result of the bankruptcy proceeding. 11 U.S.C. § 524(a)(2); *Smith*, 582 F.3d at 771-72; *see also In re Hunter*, 970 F.2d 299, 310 (7th Cir. 1992) (finding that discharge precludes any actions to establish personal liability as to pre-petition claims). A party that knowingly violates a discharge order may be held in civil contempt. *See In re Andrus*, 184 B.R. 311, 315 (Bankr. N.D. Ill. 1995). A finding of willfulness or bad faith is not required. *In re Elias*, 98 B.R. 332, 337 (N.D. Ill. 1989). Rather, "[i]t is enough that the order violated is specific and definite, and that the offending party has knowledge of it." *Id.*

As concluded above, any claims that MDE may have against the Debtor under § 523(a)(2), (a)(4), or (a)(6) were discharged with the Discharge Order. Accordingly, MDE's pursuit of the alleged pre-petition claims against the Debtor in the State Court Action constitutes a violation of the discharge injunction. *See Smith*, 582 F.3d at 771-72.

---

[12] Further, the Court notes, the Buyer's acquisition of the MDE stock has no bearing on whether MDE could have pursued its claims against the Debtor. The order approving the asset purchase agreement between the Trustee and the Buyer provided that the Trustee would "sell, assign, transfer and convey" to the Buyer all of the Trustee's "right, title and interest in and to MDE" on an "AS IS, WHERE IS" basis. (Docket No. 54, at 3, ¶ 4; Docket No. 42, Ex. A, at 1-2, ¶¶ 1 & 5.) Because the Discharge Order was entered before the sale took place and the sale was conducted on an as is, where is basis, the Trustee's conveyance of the stock in MDE — and thus any claims that MDE may have had against the Debtor — was a conveyance of claims already discharged.

The Respondents do not suggest that MDE was unaware of the Discharge Order before filing the State Court Action. Instead, the Respondents' primary argument is that MDE believed in good faith that its claims had not been discharged in the Debtor's bankruptcy case. MDE also argues that it was within its rights to pursue the State Court Action even after the Debtor raised the issue of the discharge because the bankruptcy court and the state court have concurrent jurisdiction to determine dischargeability under § 523(a)(3)(B).

Although it is true that the state court has concurrent jurisdiction to make a dischargeability determination under § 523(a)(3)(B), *see Fid. Nat'l Title Ins. Co. v. Franklin (In re Franklin)*, 179 B.R. 913, 924 (Bankr. E.D. Cal. 1995); *Kearns v. Indus. Comm'n*, 726 N.E.2d 1129, 1134 (Ill. App. Ct. 2000), MDE nonetheless ran the risk of violating the discharge injunction if its position that the alleged debt had not been discharged was incorrect. *See In re Dickerson*, 510 B.R. 289, 303-04 (Bankr. D. Idaho 2014) (noting that a creditor, believing that its debt was excepted from discharge, took a "calculated risk" in attempting to collect such debt and that the creditor subsequently "lost [its] bet"). As outlined above, the Respondents' § 523(a)(3)(B) argument failed, and, thus, MDE's actions are a violation of the discharge injunction.

As a result, the Debtor asks the Court to find that the Respondents are in contempt and to award him actual damages and attorneys' fees. Courts have found that debtors may be entitled to recover such damages and fees in a contempt proceeding for violation of the discharge injunction. *See In re Lempesis*, 557 B.R. 659, 667-68 (Bankr. N.D. Ill. 2016). In their discretion, however, courts have also declined to award damages for discharge injunction violations when such an award would be inappropriate under the circumstances. *See Payless Cashways, Inc. v. Tippecanoe Cty., Ind. (In re Payless Cashways, Inc.)*, 254 B.R. 746, 751

(Bankr. W.D. Mo. 2000); *Heuring v. Riewaldt (In re Heuring)*, 139 B.R. 856, 858 (Bankr. N.D. Ohio 1992).

In this matter, determining whether MDE's claims against the Debtor had been discharged was a complex issue, made even more complicated by the long litigation history among the parties. Substantial judicial resources were expended to understand the background of the case and the implications of the events that occurred. The conclusion reached by the Court — that the alleged MDE claims had been discharged — was not simple or clear-cut. While the Court ultimately held in favor of the Debtor, the Respondents sincerely believed that the purported debts were not discharged. Under these circumstances, the Court does not find that the Respondents were acting in bad faith. As a result, the Court, in its discretion, declines to award damages or attorneys' fees to the Debtor.

## CONCLUSION

For the foregoing reasons, the Court holds that the alleged claims that MDE may have against the Debtor have been discharged and that MDE's pursuit of those claims in the State Court Action constitutes a violation of the discharge injunction. Accordingly, the Court orders the Respondents to cease any further pursuit of the Debtor in connection with the alleged claims but denies the Debtor's request for an award of damages and attorneys' fees. A separate order will be entered consistent with this ruling.

**Dated:** February 15, 2017

**ENTERED:**

_____
JANET S. BAER
United States Bankruptcy Judge